of our panel sitting here in Jacksonville. Before we begin, Judge Choflat and I would like to acknowledge and thank one of our newest colleagues, Jeffrey Beaverstock. He is a district judge in the Southern District of Alabama. He sits in Mobile. He is a graduate of the Citadel and the University of Alabama School of Law. And we're very happy that he's here to help us with our work. You're familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close. So begin to wrap up. If we take you beyond the light, then don't worry. You're on our time and not yours. And with that, we'll begin with our first case, number 18-13750, United States v. Jonathan Camacho-Munoz. Ms. Bailey. Good morning, Your Honors. May it please the court, counsel. The district court imposed an upward variance based on a misapprehension that the co-defendant's guideline range was, in the words of the district court, at least double that of Mr. Camacho-Munoz. This mistake happened because the prosecutor asked for the upward variance because it was based on an offense level of 13, but the co-defendant's guidelines were 46 to 57 months based on an offense level of 26. And that was based on the assumption, I guess, that or at least what was believed, that the importation was dealt with more severely by the guidelines than the possession. Yes. At the time, right? That's what people, that's what the thought was. At the sentencing hearing, that is what the thought was, was that the, that Congress and the Sentencing Commission had intended to punish those who bring the drug into the prison more severely than those who receive it. In the government's later Rule 35 motion, they changed that argument a little bit because instead of relying on whether it's the giver or the receiver, they say it depends on whether it was a narcotic drug or not. Either way, I think it was wrong because the guideline never should have applied to the co-defendant. If you plainly, a plain reading of the text of the cross-reference shows that the cross-reference, which would have increased the guidelines to 26, only applies under two conditions. One, you have to be convicted under 1791A1, which is the bringer of the drugs, and you In order to be punishable under 1791B1, which is a 20-year punishment, as opposed to a B2, which is a 10-year punishment. In order to be punishable under 1791B1, the nature of the drug is what matters, or the nature of the contraband. You need to bring in something that is listed in 1791D1C, not 1791D1A or D1B. So to clarify, if you bring in a prohibited object from D1A or D1B, you're subject to 10 years in prison under B2. If you bring in something under D1C, you're subject to 20 years in prison under DB1. Well, when Mr. Camacho Munoz's stepfather came up for sentencing, as I understand the record, his advisory guideline range was 8 to 14 months? Correct. Is that correct? That is correct. And the district court, I guess it had to be a little bit of a downward variance, varied down to probation, at least in terms of a jail sentence, with a certain amount of time in house arrest. I believe, yes, I believe it was 4 years probation and 180 days house arrest. And again, as I understand the record, the government filed a motion under Rule 35 to correct the sentence, but the district court ultimately denied it because of lack of jurisdiction. Correct. Right. That is correct. And the theory that the district court used was that by the time it ruled on the motion, more than 14 days had passed, and so it was powerless, it thought, to do anything with the motion. Yes, Your Honor, that is correct. So let's talk about the district court's upward variance. One of the rationales the district court gave for varying upward was not just the guidelines, but what the district court thought was the difference in culpability of the two individuals. Yes, sir. So what do you say about that? Although he can look at the difference in culpability, I think that's where he was talking about the role in the offense, here it cannot be divorced from this mistake about the guidelines range because I think if the district court knew that they were both going to be assigned the same base offense level and that their guideline range was only going to differ, that the co-defendant was going to be 8 to 14 and Mr. Camacho-Muñez was going to be 12 to 18, the only difference for that was Mr. Camacho-Muñez had a higher criminal history category. I think if the district court knew that, it would have affected the way that he looked at the role in the offense. The relative culpability can't be divorced from the mistake in the guidelines because he was worried about the guidelines punishing the stepfather more severely, but they never were going to punish the stepfather more severely. But he was also concerned about, and this doesn't affect the ultimate point you're trying to get to, but he was also concerned about the fact that Mr. Camacho-Muñez was the one who got his stepfather involved. Yes, your honor. And lied to him in the district court's view to get him to do what he wanted him to do and that landed him with a felony conviction. That is at least potentially separate from the advisory guidelines calculation, is it not? No, I think it is, well it is separate, maybe separate from the guidelines calculation, but it's not separate from this idea that there was this disparity and that this, almost that Mr. Camacho-Muñez was coming off better than his stepfather. You still have the disparity which relies on this clearly erroneous guideline calculation. And if you look, really it was first and foremost in the judge's mind at sentencing. He says this disparity is a bitter pill for me to swallow. And under the case law, it doesn't have to be the only factor that is in the judge's mind, the erroneous fact or the materially false fact. It can be one of several factors that goes through the judge's mind. And really, if you read the transcript, the judge was really focused on this disparity and how it affected everything. How it affected that A6 concern, but also how it affected the circumstances of the offense. Did the district judge say anything? I don't think the stepfather's sentencing transcript is in the record, but did the district judge say anything or was anything raised at the stepfather's sentencing with regards to what had happened with Mr. Camacho-Muñez? Your Honor, not that I know of. I believe the timing of it was that the Rule 35 motion had already been filed because I think the government filed the Rule 35 motion to correct the sentence as soon as it realized the error, which was when the PSR on the stepfather came out. I don't know if the court said anything at the stepfather's hearing. Your Honor, the government and the district court, they were wrong about the guideline. I don't think there's a big dispute about that. And part of the reason they were always wrong is, as I was saying, the government chose to indict this case under 1791, the drug that they alleged was 1791 D1C, which meant it was a 10-year offense under 1791 B2, not under B1. The guideline only would have applied if it was under B1. So there was no reason at the time for the court to think that this would have applied or for the government to think that this would have applied, regardless of other factors. We know they were wrong. We know that the court relied on this material misapprehension when it varied upward and imposed the sentence above the guidelines. It was first and foremost in the court's mind. It was the bitter pill to swallow. We also know that because the prosecutor conceded his responsibility for his mistake in making the upward variance in the Rule 35 motion, and the prosecutor asked the court to go back and correct the sentence to one within the guidelines. I don't think the government would have asserted that if they didn't think that the court had misinformation when it sentenced Mr. Camacho-Munoz. How much time does he have left to run, approximately, on his initial sentence? Until about November of this year. So about... And then the other one kicks in, whatever it is. Yes. Yes, sir. We also know that in the briefing before this court, the government agreed on pages 12 and 21 of their brief that the preferable course would have been to give the district court the opportunity to decide what effect, if any, the co-defendant's lower guideline range would have had on Camacho-Munoz's sentence. I see my time is up. Thank you. Okay. You've saved all your time for rebuttal. Thank you. Ms. McNamara. Good morning. May it please the court. Linda McNamara for the United States. I can't dispute here that the prosecutor was wrong about the guidelines range that his co-defendant would be facing. And I think it's fair to say that when the prosecutor realized his mistake, he was concerned that he may have misled the court and that that may have factored into Camacho-Munoz's sentence. So he wanted to give the court an opportunity to revisit that sentencing decision. Tried to do that by filing a Rule 35A motion. But there were a couple of things wrong with that. First, Rule 35A does not permit a district court to revisit its choice of a reasonable sentence, which is essentially what we were asking the district court to do. Rule 35A only permits a court to correct a clear error, which this court has said is akin to a plain error that would almost certainly result in a remand. And that brings me to my second point, and that is that the prosecutor at the time was under the misimpression that there was some type of plain or clear error to correct here. And in fairness to him, he did not have the sentencing transcript at the time he filed that motion. And just as we appellate lawyers sometimes have to concede that an error occurred in the district court when we review the district court record, sometimes we have to take back a concession when we realize that that concession wasn't merited. Well, legally I think you're right. But factually it doesn't take away from the fact that the district court was given information which turned out to be correct, incorrect. Right. So you, I think you're right that Rule 35 would not have allowed the district court to go back and undo what it did. But that doesn't take away from the fact, the factual matter that the district court was given, unfortunately, incorrect information about the co-defendant's advisory guidelines. And if you read the transcript, that's at least one of the rationales the district court gave for its upward variance. So my question is, and then you can spend all the time you want answering it, why isn't the easiest and right thing to do to just remand it? And if the district court thinks that a 24-month sentence is the right sentence, no matter what the stepfather got, the district judge will reimpose a 24-month sentence and there won't be any doubt whatsoever about it. And if Mr. Camacho Munoz is able to convince them that maybe a slighter upward variance is warranted or no variance is warranted, that's where it'll be. Two answers to that. The first one is that I don't think the prediction about the stepfather's sentencing range was wrong at the time. I filed a motion for leave to file a corrected brief addressing that point and that was denied. So I'm a little hesitant to explain why that is. But I do think that the prediction for the stepfather's guidelines range was right and an error occurred at the stepfather's sentencing hearing. I know, but that's a lot of errors to walk back that the government has wandered into. I mean you told, not you, the prosecutor told the district judge for Mr. Camacho Munoz that the guidelines were X. Then when it turned out that the guidelines were not X when the stepfather was sentenced, the government didn't correct it at that time. And so we're here with a sort of very weird record. We do have a weird record. I can't dispute that, but we also have a record that's on plain error. And in order, under ordinary circumstances. Why would that be plain error? Here, the PSR said in the reasons, possible reasons for a variance in paragraph 72, the Munoz could receive a substantially lower sentence than Diaz-Roma and the co-defendant. He didn't object to that. But more importantly, at the sentencing hearing, the prosecutor. He also didn't have the priest's investigation report and couldn't have gotten it. Correct. But what he could have done, and when the prosecutor said at the sentencing hearing, the stepfather is likely facing 46 to 57 months, the district court said, I don't have the PSR's going to be facing. I believe he's going to be facing at least double what you're facing. Again, Camacho-Munoz didn't object to that. And to the contrary, what he said was, his counsel, I understand that there is a disparity and the court certainly has every right in the Booker factors to take that into consideration. Now you point out, how could she have known? She didn't have the PSR. She didn't know what the guidelines range was going to be. But she knew she didn't have it, knew the court didn't have it. The court said it didn't know what the guidelines range was going to be. So she could have done a number of things. She could have argued, judge, you can't take that into consideration. That's speculation and you shouldn't take that into consideration. Or she could have put the government to its burden of proof on that point. Or she could have said, if you're going to take into consideration the guidelines range for the stepfather, you need to wait until after the stepfather's PSR has come out or until after the stepfather has been sentenced and then sentenced me. Or she could have said, sentence them both at the same time. But none of that happened. All of that could have been avoided had the government not told the district court something incorrect about the guidelines statement. Correct. But she conceded that the court could take that into consideration. And she had an opportunity and an obligation to preserve what would ultimately, she claims now, be an error by raising that in the district court, at least asking the district court to postpone sentencing Camacho-Munoz until after the stepfather's sentencing. But ultimately, we don't think that this record shows that the courts. So on plain error review, she has to show that this actually had some effect on the stepfather's sentence. And we don't think that they can show that here. And I should point out also. Well, if you're looking at the substantial effect prong of plain error, here's one of the things that district court said. I think the guidelines underrepresent the seriousness of the offense and the defendant's role in the offense. Correct. The responsibility the court has is to make sure that the public is protected. I've already indicated in the record why I think the potential disparity between the sentence for this defendant and his co-defendant warrants an upward variance as well. Correct. That was one of the reasons. So the court was listing the reasons why a variance was warranted. And no doubt, the court mentioned this disparity in their relative culpability as one of them. But the other reasons the court listed there was, as you said, the circumstances warranted. The guidelines underrepresented the seriousness of the offense and the defendant's role in the offense and the responsibility that the court has to make sure that the public is protected. And then the court also mentioned this disparity in culpability. And really, that's what the court was getting at here. Although there was discussion of this disparity in guidelines ranges, what the court was really getting at here was a disparity in culpability. There was much discussion about how it was unfair for the stepfather to be facing a potentially longer sentence when it was really this defendant's fault for bringing in the stepfather. And this 46 to 57 months guideline range that was mentioned really never came into play. I mean, we never, certainly the prosecutor never asked for a sentence for Camacho Munism anywhere close to this 46 to 57 months range. In fact, the prosecutor told the court that he intended to move for a downward variance for the stepfather. And ultimately, what happened was the district court gave Camacho Munoz a 24-month sentence. So by the time the court had gotten to sentence Camacho Munoz, this predicted 46 to 57-month range had fallen out of the equation. The district court was assessing their relative culpability and wanted to impose a sentence on Camacho Munoz that would leave it room to vary downward sufficiently for the significantly less culpable stepfather. And so in doing so, it felt that it needed to vary upward. I should also mention that in the court's statement of reasons for the sentence imposed, the court checked five boxes for the reason for the variance, five reasons for the variance. The nature and circumstances of the offense, specifically the role in the offense, to reflect the seriousness of the offense, to promote respect to the law and to provide just punishment for the offense, to afford adequate deterrence for criminal conduct, to protect the public from further crimes, and of course, to avoid unwarranted sentencing disparities among defendants. Only one of those had anything to do with the stepfather's possible sentence, and even that had nothing to do with his sentencing range. In section 8 of the statement of reasons as additional basis for the sentence in the case, the court said a guideline sentence in this case would have been disproportional as compared to the co-conspirator, co-defendant, thus warranting an upward variance. That suggests what the court was trying to do here was to leave sufficient room below Camacho-Buñoz's sentence for a sentence for the stepfather that would take into account their relative culpability. Right, but the reason I see that as a little different is that there's a difference between varying downward from 14 months to probation and from 46 months, the presumptive range to probation. And had the district court known that the stepfather's advisory guideline range would have been lower, maybe that gap would not have been the same. I just, I don't have the confidence you do, I think, to know exactly what the district court was trying to accomplish given the stepfather's purported advisory guideline range. Well, on plain error review, you don't have to have that confidence. I'm not sure we have, I speak only for myself, but I'm not sure we have plain error review. When you look at the sentencing guideline, when you look at the sentencing transcript, she asked, she conceded that the court could take disparity into account. She didn't say guidelines range, but she said she could take the disparity into account. And she asked for the court not to vary because of the age of the defendant, because he would be serving a consecutive sentence, because he'd already been punished by having been in the shoe, losing his gain time, and being transferred to a less desirable prison facility. But she never made any suggestion that the court could not take into consideration what at the time was a predicted guidelines range for the stepfather or that that was too speculative or the court should not consider that. And she had ways to preserve that, and she didn't. So now we can't speculate on whether this disparity was one of the factors that tipped the court to vary upward. In fact, we know the court was going to vary upward despite the disparity because the court said this guideline range does not account for the seriousness of the offense. So we know from the sentencing transcript that the court was going to vary upward anyway, despite what was described as this disparity. So she cannot show here that that one factor changed the court's decision to vary or changed in any degree the degree of variance. And on plain error review, she can't prevail. Any other questions? Thank you. Thank you very much. Your Honor, listening to the government's argument, I can't help but think that she's taking inconsistent positions with respect to this, whether or not the court relied on the disparity factor. On the one hand, she says we can't speculate on whether or not the disparity played a role because he was going to get an upward variance anyway. But on the other hand, she says the court wanted to leave enough room to show that to be able to vary downward for the co-defendant. So if the court was actually wanting to leave enough room to vary downward for the co-defendant later, that seems like the court is relying on it. And that's inconsistent with saying that the court was not relying on the disparity. Secondly, just to make the record clear, the estimate of the guidelines was wrong at the time. The government charged him with a 10-year offense based on this not being a narcotic drug. If the government wanted to charge us as a narcotic drug, they would have put that in the indictment. They would have put D1C in the indictment. It would have triggered a 20-year penalty under B1, and the guideline would have applied to the co-defendant. But that's not what happened. So whether or not this is a narcotic drug or not is completely irrelevant to this appeal because of the record that's been laid for the co-defendant's indictment and the co-defendant's plea agreement. Why would they have to put the penalty in the indictment? They don't have to put the penalty, Your Honor. They do that, but it's not necessary at all. It has nothing to do with the court. Correct. And they didn't put the penalty in the indictment. What they put was which definition of prohibited object was introduced into the prison. That tells you what penalty applies. The prohibited object is defined in D. I understand. Right. So we know that they were asserting that the B1 penalty would apply. As my colleague referenced, she attempted to file a motion to correct her brief, and it sounds like she's still standing here today saying that the co-defendant's guidelines were wrong at his sentencing. That's not true. They were not wrong. The cross-reference did not apply and never would have applied to him. He had the correct guidelines at the time of his sentencing, level 13, 8 to 14 months. An improper factor also does not have to be the sole reason for the variance, and there are some cases that I had cited in my brief in support of this. I would ask the court to look at the Horta-Alvarez case where the court looked at two factors. One was erroneous. One was not. The Johnson case where the court said that they relied at least in part on the erroneous factor. The Arroyo-James case where the error fundamentally affected the calculus. And the Lazo-Martinez case where the court said it gave significant weight and it was a major part of the justification for the sentence. So it does not need to be the exclusive reason for the variance in order for us to prevail. Also, I would point out that the government's argument with respect to plain error applies only to the due process and the procedural error arguments and theories in our brief. It does not apply to the theory of relief that we have based on substantive unreasonableness of the sentence. So even if, though, plain error… The only objection is to the variance. Yes. That's the only objection that was made to the judge. Yes, that is correct. It was based on… Yes. He said do not… She said do not vary upward based on this disparity. Yeah. We submit that the objection was properly preserved. But even if this court disagrees and applies plain error, we also submit that we can prevail on the plain error test, both for the due process prong and the procedural error prong. We also submit that the standard of review is not as rigorous for the substantive unreasonableness prong and that that is a way for this court to also rule in our favor. Lastly, I would just say that the error here is not a prediction under Dean. I think in my reply brief, I explained why Dean does not apply here and why it's vastly different. I think Dean needs to be read in concert with Adonizio, where the court said if the error… Basically, if the error is objectively ascertainable, then it's cognizable under the due process prong. But if it's just a subjective expectation of the judge, then it's not. Here, the error was objectively ascertainable because all you need to do is read the codefendant's I'm sorry, the plain text of the guidelines, the codefendant's indictment, and the codefendant's plea agreement. Today, Your Honor, we're just asking for the same remedy that the government already requested in the court below in the Rule 35 motion, go back for resentencing, and indicated that… The government also indicated it would be preferable in its briefing before this court. We're just asking him to make the sentence be vacated and remanded and resentenced based on accurate information that we now know the codefendant's guidelines were 8 to 14 months and his offense level was not double that of Mr. Camacho-Munoz. The court has no further questions. Thank you. Thank you both very much. Thank you. Thank you.